**WO**

MDR

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernest Grekov, | No. CV-26-03633-PHX-MTL (JFM) |
| Petitioner, | **ORDER** |
| v. | |
| Erik Rokosky, | |
| Respondent. | |

On May 22, 2026, self-represented Petitioner Ernest Grekov, who is confined in the Eloy Detention Center, filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus (Doc. 1) challenging his immigration detention. The Court will deny the Petition and dismiss this action.

**I.      Petitioner's First  Petition**

Petitioner first sought habeas corpus relief in *Grekov v. Rokosky*, CV-26-02672-PHX-MTL (JMF).  In his petition, Petitioner did not allege when or how he entered the United States, but alleged he had been detained since February 12, 2025, and had a pending appeal of an immigration judge's order denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  In an April 21, 2026 Order, the Court denied his petition, concluding Petitioner was subject to mandatory detention and, therefore, not entitled to a bond hearing under statutory or constitutional authority.  *See* Doc. 3 in CV-26-02672.

. . . .

**II.    Petitioner's Current Petition**

In his current Petition, Petitioner states he entered the United States in February 2023, using the CPB One application and was released on parole.* He claims his "process was going right outside" and he never did anything criminal, never had "any problems with [the] immigration process," and obtained a Social Security card, work permit, and driver's license. He also filed an application for asylum and withholding of removal.

Petitioner alleges he was re-detained on February 11, 2025, and has been in immigration detention since then. On November 17, 2025, an immigration judge denied his application for asylum, withholding of removal, and protection under the CAT. Petitioner filed an appeal, which is pending before the Board of Immigration Appeals.

In Ground One, Petitioner contends his prolonged detention violates his right to due process. In Ground Two, he asserts Immigration and Customs Enforcement is detaining him "under the wrong statute." In Ground Three, he raises a claim regarding his conditions of detention and medical care. In Ground Four, he appears to allege he should not have been re-detained.

**III.    Discussion**

**A.    Conditions of Confinement Claim**

Petitioner's conditions of detention claim arises, if at all, under civil rights law, not habeas corpus law. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are

---

* Petitioner asserts his "admission class [was] DT." United States Citizenship and Immigration Services explains:

> Aliens who are outside of the United States may request to be paroled into the United States based on urgent humanitarian reasons or a significant public benefit. These aliens are not paroled into the United States under a categorical parole program or process. Often, the Class of Admission (COA) for these aliens is "DT" . . . .

*See* https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies [https://perma.cc/AY36-JEA5].

the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a [civil rights] action." (citation omitted)).  The Court will dismiss Ground Three.

### B.    Remaining Claims

First, Petitioner was not entitled to a hearing before being re-detained.  Under 8 U.S.C. § 1182(d)(5), the "Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." Aliens paroled under this section are not deemed admitted and "when the purposes of [the] parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall* forthwith return or be returned to the custody from which he was paroled" and "his case shall continue to be dealt with in the same manner as that of any other applicant for admission." *Id.*  (emphasis added).

The Ninth Circuit has explained that there is "no substantive liberty or property interest . . . in temporary parole status." *Wong v. United States*, 373 F.3d 952, 968 (9th Cir. 2004), *abrogated on other grounds as stated in Pettibone v. Russell*, 59 F.4th 449, 452-53 (9th Cir. 2023).  "The [Immigration and Nationality Act (INA)] does not create any liberty interest in temporary parole that is protected by the Fifth Amendment," but instead "makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.*  And as the Supreme Court has explained, the "procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  For example, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.*  By its own terms, parole under § 1182(d)(5) is such a benefit that may be granted or denied in the discretion of the Secretary of Homeland Security.  Petitioner therefore lacks any interest in maintaining his

- 3 -

parole that is protected by the Due Process Clause and that would require the government to provide him with a hearing before terminating parole.

Second, "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . ) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission who are found "not clearly and beyond a doubt entitled to be admitted . . . shall be detained." *Id.* § 1225(b)(2)(A). Aliens classified under § 1225(b)(2)(A) are not entitled to a bond hearing. *See Chavez v. Noem*, 819 F. Supp. 3d 958, 959-61 (D. Ariz. 2026); *see also Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026) ("Section 1225(b)(2) does not include any exception that permits the government to release detained aliens on bond."). Petitioner was not found "clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A), and, therefore, is properly classified as subject to mandatory detention under § 1225.

That Petitioner was paroled upon his entry to the United States does not change the Court's analysis. *Vazquez Romero v. Garland*, 999 F.3d 656, 661 (9th Cir. 2021) ("The parole of an alien into the United States does not affect the alien's immigration status. Aliens paroled elsewhere in the country for years pending removal are treated for due process purposes as if stopped at the border." (citations and quotation marks omitted)). Petitioner's status did not change when he was granted parole, nor did it change when his parole was revoked. *See* 8 U.S.C. § 1182(d)(5)(A) (stating that "parole of such alien shall not be regarded as an admission of the alien"); 8 C.F.R. § 1.2 (stating that an "arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked").

Third, an alien unlawfully present in the United States "has only those rights regarding admission that Congress has provided by statute," and the "Due Process Clause provides nothing more." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see also Lopez v. Noem*, No. CV-26-00345 (JHR), 2026 WL 266597, at *3 (S.D.N.Y. Feb. 2, 2026). As the Supreme Court has long held, in these circumstances "the

decisions of executive or administrative officers, acting within powers expressly conferred by Congress, *are* due process of law." *Thuraissigiam*, 591 U.S. at 138 (emphasis added) (citation omitted). Petitioner was not entitled to anything beyond the process provided him under the INA before being re-detained. *See Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015) (rejecting that an alien's "constitutional right to procedural due process" was violated because the alien "never formally entered the United States" and thus "ha[d] no such right").

Fourth, the Supreme Court has determined there is no statutory right to periodic bond hearings for aliens detained during the pendency of removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("Until [removal proceedings end] nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). And while *Jennings* did not address whether such a right exists under the Constitution, the Supreme Court subsequently held that an alien unlawfully present in the United States "has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140; *see also Lopez*, 2026 WL 266597, at *3. Petitioner is subject to mandatory detention and, therefore, is not entitled to a bond hearing under statutory or constitutional authority.

Finally, the Court lacks jurisdiction to review the decision to terminate Petitioner's parole. "[N]o court shall have jurisdiction to review" any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii). The Ninth Circuit has held that a district court "properly reject[s] [the] argument that it [has] jurisdiction to review the revocation of advance parole" under 8 U.S.C. § 1182(d)(5). *See Hassan v. Chertoff*, 593 F.3d 785, 789-90 (9th Cir. 2010) (per curiam); *see also Vazquez Romero*, 999 F.3d at 665 ("[T]he jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) applies to discretionary parole decisions under § 1182(d)(5)."); *Torres v. Barr*, 976 F.3d 918, 931-32 (9th Cir. 2020) (en

banc) ("[T]he parole authority under [8 U.S.C. § 1182(d)(5)] of the [INA] is delegated solely to the Secretary of Homeland Security . . . ." (third alteration in original) (quotation marks omitted)).  Indeed, § 1182(d)(5) (emphasis added) provides that an alien previously granted parole must be returned to custody "when the purposes of such parole shall, *in the opinion of the Secretary of Homeland Security*, have been served." Additionally, the APA states that it does not apply to "statutes [that] preclude judicial review" or to "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a); *see also Padilla v. Bondi*, No. CV-24-00332-TUC-JCH, 2025 WL 2663010, at *5 (D. Ariz. Sep. 17, 2025) (stating the "Court does not have the jurisdiction to review the denial of Plaintiff's advance parole application" and citing 5 U.S.C. § 701(a) and 8 U.S.C. § 1252(a)(2)(B)); *Syed v. Mayorkas*, No. 3:23-cv-00083-IM, 2023 WL 6596330, at *3 (D. Or. Oct. 10, 2023) ("Because the decision to parole Plaintiff into the United States is discretionary under § 1182(d)(5), the INA and APA prevent this Court from reviewing the USCIS's decision.").

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus (Doc. 1) is **denied**. The Clerk of Court must enter judgment accordingly and close this case.

Dated this 2nd day of June, 2026.

Michael T. Liburdi
United States District Judge

- 6 -